IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-00102-01-CR-W-DW |
| | ) | |
| ONEIL ROBERT CLARKE, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Oneil Robert Clarke's Motion to Dismiss Indictment (doc #18). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On April 3, 2013, the Grand Jury returned a one-count indictment against Oneil Robert Clarke. The indictment charges that on March 1, 2013, defendant Clarke, an alien who had been previously deported and removed from the United States on February 18, 1999, subsequent to a felony conviction of attempted criminal possession of a weapon for which defendant was convicted and sentenced to one year imprisonment on May 27, 1998, in the Supreme Court of New York, was found in the United States without having obtained the express consent of the Secretary of Homeland Security or the Attorney General of the United States for readmission into the United States, in violation of 8 U.S.C. §§ 1326(a) and (b)(1).

An evidentiary hearing on the motion to dismiss was held on July 10, 2013. Defendant Clarke was represented by Assistant Federal Public Defender Robert G. Kuchar. The government

was represented by Andrew Alexander, a third year law student and legal intern at the United States Attorney's Office, and Assistant United States Attorney Roseann A. Ketchmark. Agents Daniel Byrd and Nick Patten of Immigration and Customs Enforcement testified at the hearing.

## II. FACTUAL FINDINGS

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On December 29, 1998, an Immigration Judge issued a deportation order for O'Neal Robert Clarke, a/k/a Warren Price, a/k/a Claude Cauter. (Tr. at 12; Defendant's Ex. 1) On January 6, 1999, a Warrant of Deportation was executed which is Immigration's record of when the person was actually removed. (Tr. at 14; Defendant's Ex. 2) The Warrant of Deportation is in the name of O'Neal Robert Clarke. (Tr. at 14; Defendant's Ex. 2)

2. Defendant Clarke was charged in April 2007 in Jackson County, Missouri, with murder. (Tr. at 6-7) Clarke was arrested in California on the Jackson County, Missouri charges and told authorities that his name was Warren Price. (Tr. at 7) Clarke was placed in the NCIC, the National Crime Information system, as Warren Price. (Tr. at 7) The Los Angeles Police Department would have had access to the IAFIS (Integrated Automated Fingerprint Identification System) and defendant Clarke's fingerprints would have come back with the name of Warren Price because that was the name given by Clarke the first time he was arrested by law enforcement. (Tr. at 27) The Los Angeles Police Department does not have access to IDENT (an Immigration fingerprint database which holds information on all persons encountered by Border Patrol, Coast Guard and Immigration and Customs Enforcement, persons who have applied for benefits with U.S. Citizenship and Immigration Services, as well as persons who have entered the country legally through Customs and Border Protection). (Tr. at 9-10, 27)

3. At the time of defendant Clarke's arrest in California, Immigration was contacted. (Tr. at 8) Law enforcement agencies contact Immigration when they suspect a person in their custody to be an alien of the United States. (Tr. at 36) Immigration typically conducts a brief interview with the person to try and establish nationality and removability prior to issuing a detainer. (Tr. at 10) A detainer is basically a request to hold the person so that Immigration can do a follow-up investigation to determine whether or not to pursue removal proceedings. (Tr. at 11) No fingerprints are obtained by Immigration prior to issuing a detainer. (Tr. at 10) In this instance, a detainer was issued by Immigration based on the name, date of birth and nationality provided, that is the

name of Warren Price who was a national of Jamaica.[1] (Tr. at 8) At that time, Immigration did not realize that the person in custody was actually Oneil Clarke. (Tr. at 8) Immigration had a file on a person by the name of Warren Price, who was a previously deported alien, in their system.[2] (Tr. at 8, 36) The detainer was placed in the Immigration file for Warren Price, not in the Immigration file for Oneil Clarke. (Tr. at 25)

4. Defendant Clarke was taken to Jackson County, Missouri, in April 2007, and held under the name of Warren Price. (Tr. at 9) Clarke was convicted of manslaughter and assault under the name of Warren Price. (Tr. at 9, 17) An alias of Steven Clarke was listed on the conviction documents. (Tr. at 7) Clarke was sentenced and served his time under the name of Warren Price. (Tr. at 17)

5. Defendant Clarke was released from the Missouri Department of Corrections on March 1, 2013, after serving his sentence and was taken into Immigration custody based on the detainer that was issued in the name of Warren Price. (Tr. at 6, 11) This was the first time Clarke had come into Immigration custody since his prior deportation. (Tr. at 6) Immigration was under the assumption that they were bringing Warren Price into custody. (Tr. at 28, 42) The agent had ordered the Immigration file for Warren Price prior to picking up the defendant. (Tr. at 42)

6. Agent Nick Patten transported defendant Clarke to the Immigration office and fingerprinted him. (Tr. at 9, 41) It is standard procedure for Immigration to fingerprint individuals received into their custody so that they can identify positively who they have in custody. (Tr. at 10, 44) Immigration runs two different fingerprint systems simultaneously: IAFIS, which gives a criminal history printout; and IDENT, the Immigration only database. (Tr. at 9) The fingerprint search conducted under IDENT returned a positive identification for Oneil Robert Clarke. (Tr. at 11, 19, 27, 38, 42) The fingerprint search conducted under IAFIS came back to the name Warren Price, because that is the name Clarke

---

[1] The Detainer for Warren Price has an AKA of "Oneil Clark" on the form. (Tr. at 21; Defendant's Ex. 3) The AKA of "Oneil Clark" is written in different handwriting than the rest of the form. (Tr. at 25-26; Defendant's Ex. 3) The detainer which was originally sent to the Los Angeles Police Department was forwarded on to Jackson County and then on to the Missouri Department of Corrections. (Tr. at 31) It is unknown when the AKA of "Oneil Clark" was added to the form. (Tr. at 31-33) Agent Byrd testified that he believed the AKA of "Oneil Clark" was added later on to the original detainer because the detainer was only assigned to the Immigration file for Warren Price. (Tr. at 33) Agent Byrd testified that it was his belief that somewhere along the way of being transferred to Jackson County or the Missouri Department of Corrections, it was discovered that the defendant had an AKA of "Oneil Clark." (Tr. at 33)

[2] While Oneil Robert Clarke's Immigration file would have shown that he had previously used the alias of Warren Price (Defendant's Ex. 1), there is no indication that Warren Price's Immigration file would contain the name Oneil Robert Clarke. (Tr. at 35) Oneil Robert Clark and Warren Price are two separate individuals. (Tr. at 35)

3

used the first time he was arrested by law enforcement and, hence, his official name in IAFIS. (Tr. at 38, 42) The IAFIS search also came back with multiple aliases, one of which was Oneil Clarke. (Tr. at 38)

### III. DISCUSSION

Defendant Clarke argues that the indictment pending against him should be dismissed on the ground that it was returned after the permissible time period found in 18 U.S.C. § 3282 (five years), in violation of the statute of limitations. (Motion to Dismiss Indictment (doc #18) at 1) The statute under which defendant was charged provides that "any alien who—(1) has been … deported, or removed … and thereafter (2) … is at any time found in, the United States" without the permission of the Attorney General shall be guilty of a violation of 8 U.S.C. § 1326. Defendant cites United States v. Gomez, 38 F.3d 1031 (8th Cir. 1994), for the proposition that "found in" for purposes of the statute of limitations begins running when immigration authorities could have, through the exercise of due diligence typical of law enforcement authorities, discovered the violation. (Motion to Dismiss Indictment (doc #18) at 2) According to defendant, not only could the immigration authorities have, through due diligence, discovered that he was in the United States in 2006, they actually knew of his illegal status within the United States in 2006 when they placed an immigration hold on him. (Id. at 2-3)

The five-year statute of limitations for prosecutions under section 1326 begins running as soon as the offense is complete. See United States v. Gomez, 38 F.3d 1031, 1034 (8th Cir. 1994). If an alien's entry into the country is surreptitious, a "found in" violation is not complete until the alien is "discovered" by immigration authorities. See United States v. Diaz-Diaz, 135 F.3d 572, 575 (8th Cir. 1998); Gomez, 38 F.3d at 1034-35. Discovery by immigration authorities consists of two elements: (1) the physical presence of the deported alien in the United States must be discovered; and (2) the identity and status of the previously deported alien must be ascertained.

See Diaz-Diaz, 135 F.3d at 577; Gomez, 38 F.3d at 1036. As set forth in Gomez:

> The aspect of discovery requires linking the presently perceived alien (Javier Dario Gomez) to a historical event (the deportation of Rodrigo Rojas Gomez), which occurs only when Javier Dario Gomez and Rodrigo Rojas Gomez are discovered to be the same person. This second aspect of discovery was not present during Gomez's May 3 visit to the INS Legalization Office. Although Gomez was obviously physically present in the INS Legalization Office, the information he provided the INS was designed to conceal his identity. … Thus, the INS did not "find" Gomez on May 3, 1988.

Id. Using this guidance in the case of Oneil Robert Clarke, discovery by immigration authorities requires linking the presently perceived alien (the person arrested in California) to a historical event (the deportation of Oneil Robert Clarke). This occurs only when the person arrested in California and Oneil Robert Clarke are discovered to be the same person. Although Clarke was obviously physically present when he was arrested in California, the information he provided to law enforcement was designed to conceal his identity and Immigration did not "find" Clarke in California.

The question then becomes, as it did in Gomez, whether and when knowledge of a defendant's identity and status should be attributed to the Immigration authorities. In Gomez, the Immigration authorities fingerprinted Gomez on May 3, 1988. 38 F.3d at 1032, 1037. The court found that because the Immigration authorities had in their possession the fingerprints of Gomez as both Rodrigo Rojas Gomez and as Javier Dario Gomez, and had access to the FBI facilities for fingerprint comparison, they possessed both the information and the means necessary to determine Gomez's true identity and status a deported alien. Id. at 1037. As "immigration authorities could have, through the exercise of diligence typical of law enforcement authorities, discovered the violation" at that time,[3] the statute of limitations began to run. Id.

---

[3] The court actually extended the time for an additional sixty days in order to allow the FBI time to

In the case before this Court, the Immigration authorities were not in possession of defendant Clarke's fingerprints until March 1, 2013. (See Fact Nos. 3, 5 and 6, supra)  There is no indication that they were in possession of information necessary to determine Clarke's true identity and status as a deported alien prior to that time (nor that through the exercise of diligence typical of law enforcement authorities, they could have come into possession of the necessary information any sooner than they did).[4]  Defendant Clarke was indicted on April 3, 2013, just over one month from the time he was "found" by Immigration authorities.  There is no statute of limitations violation.  See United States v. Soriano-Hernandez, 310 F.3d 1099, 1105 (8th Cir. 2002)(where defendant used aliases which prevented immigration authorities from discovering his illegal presence, statute of limitations did not begin to run).

## IV.  CONCLUSION

For the foregoing reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Clarke's Motion to Dismiss Indictment (doc #18).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same.  A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and

---

process the fingerprints.  Gomez, 38 F.3d at 1038.

[4] While the Los Angeles Police Department might have had notice of the alias "Oneil Clarke" when they ran defendant's fingerprints in the IAFIS (see Fact Nos. 2 and 6), there is no indication that they advised Immigration of this alias.  The information before the Court suggests that Immigration authorities did not realize that the person in custody was actually Oneil Clarke.  (See Fact No. 3, supra)  Immigration authorities had no access to fingerprints, only the name provided to them, which was Warren Price.  (Id.)  Defendant Clarke has presented no authority to suggest that information available to a local police department should be attributed to federal Immigration authorities for purposes of determining statute of limitations issues.

6

Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

<i>/s/ Sarah W. Hays</i>
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE